Deval R. Zaveri, SBN 213501
James A. Tabb, SBN 208188
**ZAVERI TABB** APC
402 West Broadway, Suite 1950
San Diego, CA 92101
Tel:  (619) 831-6988
Fax:  (619) 239-7800
dev@zaveritabb.com
jimmy@zaveritabb.com

James R. Patterson, SBN 211102
Allison H. Goddard, SBN 211098
**PATTERSON LAW GROUP**
402 W. Broadway, 29th Floor
San Diego, CA 92101
Tel:  (619) 756-6990
Fax:  (619) 756-6991
jim@pattersonlawgroup.com
ali@pattersonlawgroup.com

*Attorneys for Representative Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN TRENZ, FRANCIS BREIDENBACH, CAITLYN FARRELL, and NOELLE SIMMS on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>      vs.<br><br>ON-LINE ADMINISTRATORS, INC. (dba PEAK PERFORMANCE MARKETING SOLUTIONS), a California Corporation; VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation; and DOES 1-5,<br><br>            Defendants. | Case No. 2:15-cv-08356-AB-KS<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT for Damages and Injunctive Relief Pursuant To The Telephone Consumer Protection Act, 47 U.S.C. § 227** *et seq.*<br><br>Jury Trial Demanded |

# I.    **INTRODUCTION**

1.    This is a class action against Defendants On-Line Administrators, Inc. (dba Peak Performance Marketing Solutions) ("Peak Performance") and Volkswagen Group of America, Inc. ("Volkswagen") (collectively, "Defendants") in negligently, and/or willfully, contacting Plaintiffs on their cellular telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA").

2.    At Volkswagen's direction, Peak Performance called Plaintiffs Brian Trenz, Francis Breidenbach, Caitlyn Farrell, and Noelle Simms ("Plaintiffs") multiple times on their cellular telephones from an autodialer to solicit business.  Defendants did not have Plaintiffs' consent to contact them for such purposes.  Plaintiff Trenz had an attorney write to Peak Performance on his behalf demanding that the solicitation calls stop, to no avail.  Plaintiffs have since discovered that many others across the country have received similar unlawful calls from Defendants.

3.    Plaintiffs bring this class action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from Defendants' illegal actions.

4.    Plaintiffs allege as follows upon their personal knowledge as to their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their counsel.

# II.    **PARTIES, JURISDICTION, AND VENUE**

5.    Plaintiff Brian Trenz is, and at all times mentioned herein was, a citizen and resident of the State of Texas who resides in San Antonio, Texas.

6.    Plaintiff Francis Breidenbach is, and at all times mentioned herein was, a citizen and resident of the State of California who resides in Los Angeles, California.

7.    Plaintiff Caitlyn Farrell is, and at all times mentioned herein was, a citizen and resident of the State of California who resides in Martinez, California.

8.    Plaintiff Noelle Simms is, and at all time mentioned herein was, a citizen and resident of the State of California who resides in San Diego, California.

9.    Defendant On-Line Administrators, Inc. (dba Peak Performance Marketing Solutions) is a marketing company.  Plaintiffs are informed and believe and thereon allege, that at all times mentioned herein Peak Performance was a corporation founded under the laws of the State of California, whose primary corporate offices are located at: 26025 Mureau Road, Calabasas, CA 91302, making Peak Performance a citizen of California.  Plaintiffs allege that at all times relevant herein Peak Performance conducted business in California because its California business offices are located at the same address, and it performed its business in the State of California, and in the County of Calabasas, and within this judicial district.  Peak Performance markets to consumers who have purchased cars from certain dealerships with whom Volkswagen maintains contracts.

10.    Plaintiffs are informed and believe, and thereon allege, that Defendant Volkswagen Group of America, Inc. is the American branch of an international car manufacturer with dealerships across the United States, and is, and at all times mentioned herein was, a corporation founded under the laws of the State of New Jersey, whose primary corporate offices are located at:  2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.  Plaintiffs allege that at all times relevant herein Volkswagen conducted business in, among others, the State of California, the County of Calabasas, and within this judicial district.  Volkswagen is a car manufacturer and retailer and is the parent corporation for the Audi of America, which manufactures and sells Audi brand vehicles.  Volkswagen, through Audi, also offers service packages to repair and perform maintenance on Audi brand vehicles purchased in the United States.

11.    This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this lawsuit seeks enforcement of rights under the TCPA, a federal statute.

12.    This Court has personal jurisdiction over Defendants due to their substantial contacts with California, as alleged herein.  Peak Performance is in fact headquartered in California, and Volkswagen operates throughout California.

13.     Venue is proper in the United States District Court for the Central District of California.   Under 28 U.S.C. § 1391(b)(1), venue is proper in any district where at least one defendant resides if all defendants are residents of the state in which the district is located.   A corporate defendant is deemed to reside in any state where it is subject to personal jurisdiction (28 U.S.C. § 1391(c)), and as alleged herein, all Defendants are subject to personal jurisdiction in California.   In a state with multiple judicial districts, a corporate defendant is also deemed to reside in any judicial district within the state in which it would be subject to personal jurisdiction if that district were a separate state (or, if no such district exists, then the district in which it has the most contacts).   28 U.S.C. § 1391(d).   Here, at least one Defendant, Peak Performance, is a resident of this district – indeed, it is headquartered here.   Thus, venue is proper under 28 U.S.C. § 1391(b)(1). Venue is also proper under 28 U.S.C. § 1391(b)(2) because, on information and belief, a substantial number of the calls complained of in this lawsuit originated from this district.

### III.   THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA) 47 U.S.C. § 227

14.     In 1991, Congress enacted the Telephone Consumer Protection Act (TCPA) in response to a growing number of consumer complaints regarding certain telemarketing practices.

15.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers," and artificial voice or pre-recorded telephone calls. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of an artificial or prerecorded voice, and autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.   47 U.S.C. § 227(b)(1)(A)(iii).

16.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live

solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003).

17.    Since then the FCC promulgated several other orders necessarily limiting the phone calls that can be made by telemarketers. In 2012, the FCC expanded the scope of the TCPA by eliminating the established business relationship exemption for all telemarketing calls, mandating that all telemarketing calls require prior express written consent to be obtained from the called party. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, FCC 12-21, issued Feb. 15, 2012 (holding in part, "Specifically, in this Order, we: (1) revise our rules to require prior express written consent for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines and accordingly eliminate the established business relationship exemption for such calls to residential lines while maintaining flexibility in the form of consent needed for purely informational calls.").

## IV.    FACTUAL ALLEGATIONS

18.    At all relevant times, Plaintiff Trenz was and is a citizen of the State of Texas; Plaintiffs Breidenbach, Farrell, and Simms were and are citizens of the State of California; and the Plaintiffs are each a "person" as defined by 47 U.S.C. § 153(32).

19.    Defendants are, and at all relevant times were, entities that meet the definition of "person," as defined by 47 U.S.C. § 153(32).

20.    At all relevant times, Defendants conducted business in the State of California and in the County of Calabasas, within this judicial district.

21.    In 2011, Plaintiff Trenz purchased an Audi A4 automobile in Austin, Texas, from a used automobile dealer. At the time of the purchase, the car was equipped with an Audi manufacturer's warranty covering the vehicle until 2012.

22.     Shortly after purchasing the Audi, Plaintiff Trenz brought the car into Cavender Audi, a San Antonio Audi Dealership, for maintenance and service.  Plaintiff Trenz provided his contact information to the dealership solely for the purpose of providing the dealership the ability to notify him when the servicing was complete. Plaintiff did not then give, nor at any other time has given, his written consent to receive autodialed telemarketing calls from Defendants or any other entity or agent acting on behalf Defendants.  At the end of 2012, the Audi full service warranty expired and Plaintiff discontinued using the Audi Dealership to service his vehicle.

23.     Several months following the expiration of the warranty, Plaintiff received multiple calls on his cell phone from Peak Performance. (Ex. 1)  Based on information and belief, Peak Performance contacted Plaintiff on behalf of Volkswagen, the parent company of Audi, to encourage him to either purchase a new Audi or retain his use of the Audi service center.

24.     Since at least the late 2000s, Plaintiff Breidenbach has leased at least four Volkswagen automobiles from Santa Monica Volkswagen, including two Jettas, a CC, and a Passat.  Plaintiff Breidenbach has received multiple calls on his cell phone from Peak Performance informing him that one of his VWs was due for service, and encouraging him to bring the vehicle into the dealership for servicing. (Ex. 2)  Based on information and belief, including having heard an artificial or prerecorded voice or a pause before a live person came on the line, and based on his counsel's investigation, Plaintiff believes the calls were artificial voice or prerecorded calls or autodialed "live" calls.  Plaintiff did not consent to receiving any such calls.

25.     Plaintiff Farrell purchased a Volkswagen Tiguan in August 2012.  She received at least two calls on her cell phone from Peak Performance encouraging her to bring her vehicle into a dealership for servicing. (Ex. 3)  Based on information and belief, and on her counsel's investigation, Plaintiff believes the calls were autodialed "live" calls.  Plaintiff did not consent to the calls and asked to be taken off of Peak's calling list.

26. Plaintiff Simms serviced her Volkswagen Jetta at Volkswagen Santa Monica and City Volkswagen. She recalls receiving multiple calls on her cell phone encouraging her to bring in her vehicle for servicing. Plaintiff Simms believes that the calls were placed using an autodialer. Defendant Peak Performance has produced documentation of five calls being placed to Plaintiff Simms in 2014. (Ex. 4) Based on information and belief, including the investigation conducted by her counsel and the call log documentation produced by Defendant Peak Performance, Plaintiff Simms believes the calls were in fact, placed using an autodialer. Plaintiff Simms did not consent to receiving any such calls.

27. Peak Performance is a marketing company that has agreements with Volkswagen to be its customer retention management (CRM) partner for all Audi vehicles. Peak Performance holds out on its website that is the preeminent and exclusive CRM marketing provider for Audi and Volkswagen. Peak Performance's website states, "No other automotive CRM company is better equipped to help you acquire new customers… We return your lost customers with impressive efficiency, utilizing effective email marketing, highly targeted mail, customized offers and even phone calls." http://gotopeak.com/service/recapturing-customers/

28. Plaintiffs aver based on information, belief, and research on Peak Performance's and other websites, that Peak Performance contacts previous service customers of Volkswagen and Audi on their cell phones and using an autodialer in order to solicit business; specifically, to encourage previous customers to again utilize the dealership's repair and maintenance services. Plaintiff Trenz spoke to a Peak Performance agent or employee who indicated to him that the local dealership had given Peak Performance his contact information to solicit repair and maintenance services to him. Plaintiff's counsel's subsequent investigation and discovery has revealed that in fact, local dealerships did provide telephone numbers that were used by Peak Performance and its agents to place the calls. Thus, Peak Performance was acting as an agent for Volkswagen pursuant to CRM agreements for the benefit of Volkswagen.

29.     In June 2013, Peak Performance called Plaintiff Trenz on his cellular telephone number, ending in "1870," in an attempt to telemarket Volkswagen's products and services. (Ex. 1)   Between June 2013 and July 2013 Plaintiff Trenz received multiple calls from Peak Performance, and has, at the time of filing this complaint, received at least 2 telemarketing calls from Peak Performance on Defendant Volkswagen's behalf.  When Plaintiff Trenz answered, he briefly heard "dead air" then a "click" before the agent came on the line to speak to Plaintiff, evidencing that Peak Performance used an autodialer to make the call.  Another time, Plaintiff Trenz called the number that was on his caller identification log and spoke to the agent who confirmed that the agent was calling on behalf of Peak Performance to sell its services.

30.     None of the Plaintiffs provided Peak Performance with his or her cellular phone number, nor did any Plaintiff ever give verbal or written consent to be called by any Defendant for the solicitation of services.  Nor did any Plaintiff give any Defendant prior express verbal or written consent to be called on his or her cellular telephone via an artificial voice or prerecorded call, nor with the use of an autodialer, pursuant to 47 U.S.C. § 227(b)(1)(A).

31.     Notwithstanding the fact that Plaintiffs did not provide Peak Performance with their cellular numbers at any time, Volkswagen, or its agents, called Plaintiffs on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).  This automatic telephone dialing system has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, to dial such numbers.

32.     The telephone numbers Defendants and/or their agents called are assigned to cellular telephone services for which Plaintiffs incur a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

33.     These telephone calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

- 7 -

1    34.   These telephone calls by Defendants and/or their agents violated 47 U.S.C.

2    § 227(b)(1).

3    35.   Under the TCPA and pursuant to the FCC's February 2012 Declaratory

4    Ruling, the burden is on Defendants to demonstrate that Plaintiffs provided prior

5    express written consent within the meaning of the statute.

6                    **V.   CLASS ACTION ALLEGATIONS**

7    36.   Plaintiffs bring this action on behalf of themselves and on behalf of all

8    others similarly situated ("the Class").   Plaintiffs represent, and are members of, the

9    Class, consisting of:

10
11        **Pre-October 16, 2013 Class:** All persons within the United States who
          received any telephone call from Defendants or their agents to said person's
12        wireless number as part of Defendant Volkswagen Group of America's
13        "Target and Retain After Sales Customers' ('TRAC') program, from
          October 26, 2011 until October 15, 2013.
14
15        **Post-October 16, 2013 Class:** All persons within the United States who
          received any telephone call from Defendants or their agents to said person's
16        wireless number as part of Defendant Volkswagen Group of America's
17        "Target and Retain After Sales Customers' ('TRAC') program, after
          October 16, 2013.
18
19    37.   Excluded from the Class are Defendants; any entities in which any

20    Defendant has a controlling interest; any of Defendant's agent(s) and employee(s);

21    Plaintiffs' counsel; the Court to whom this action is assigned and any member of the

22    Court's staff and immediate family; and claims for personal injury, wrongful death,

23    and/or emotional distress.

24    38.   Plaintiffs do not know the number of members in the Class, but believe the

25    Class members number in the tens of thousands, if not more.   Plaintiffs believe that

26    Defendants engaged in a pattern and practice of contacting former dealership customers

27    in the same manner that they used to contact him.   Thus, this matter should be certified

28    as a class action to assist in the expeditious litigation of this matter.

39.     Plaintiffs and members of the Class were harmed by the acts of Defendants in, but not limited to, the following ways:  Defendants, directly and/or through their agents, illegally contacted or attempted to contact Plaintiffs and the Class members via their cellular telephones by using an artificial or prerecorded voice, or an autodialer, thereby causing Plaintiffs and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid; by having to retrieve or administer messages left during those illegal calls; and invading the privacy of Plaintiffs and the Class members.  Plaintiffs and the Class members were damaged thereby.

40.     This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for any personal injury and claims related thereto.  Plaintiffs reserve the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

41.     The joinder of the Class members is impracticable and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the Court.  The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.  The Class can be identified through the records of Defendants and/or their agents.

42.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact common to the Class predominate over questions that may affect individual Class members, including the following:

a.)     Whether, within the four years prior to the filing of this Complaint, Defendants and/or their agents made any call (other than a call made for emergency purposes or made with the prior express consent of the called party) to a Class member using an artificial or prerecorded voice or any

automatic telephone dialing system to any telephone number assigned to a cellular telephone service;

b.)   Whether Defendants' conduct was knowing and/or willful;

c.)   Whether Defendants are liable for damages, and the extent of statutory damages for such violation; and

d.)   Whether Defendants should be enjoined from engaging in such conduct in the future.

43.   As persons who received numerous calls by Defendants and/or their agents using an artificial or prerecorded voice or an automatic telephone dialing system without prior express consent, Plaintiffs are asserting claims that are typical of the Class.  Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no interests antagonistic to any member of the Class.

44.   Plaintiffs and the members of the Class have all suffered irreparable harm as a result of Defendants' unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm.  In addition, these violations of law would be allowed to proceed without remedy and Defendants would undoubtedly continue such illegal conduct.  Because of the size of the individual Class members' claims, few Class members could afford to seek legal redress for the wrongs complained of herein.

45.   Plaintiffs have retained counsel experienced in handling class action claims.

46.   A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendants to comply with federal and California law.  The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for a violation of this statute is minimal.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.  Defendants have acted on

grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER**
**PROTECTION ACT 47 U.S.C. § 227 ET SEQ.**

47.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

48.     The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

49.     As a result of Defendants' negligent violations of 47 U.S.C. § 227 et seq., Plaintiffs and the Class members are entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).  Plaintiffs and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

50.     Plaintiffs and the Class members are also entitled to an award of attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE**
**CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.**

51.     Plaintiffs incorporate by reference the above paragraphs 1 through 42, inclusive, of this Complaint as though fully stated herein.

52.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

53.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiffs and the Class members are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

1  54. Plaintiffs and the Class members are also entitled to and seek injunctive
2  relief prohibiting such conduct in the future.

3  **PRAYER FOR RELIEF**

4  Wherefore, Plaintiffs respectfully request the Court grant Plaintiffs and the Class
5  members the following relief against Defendants:

6  **FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF**
7  **THE TCPA, 47 U.S.C. § 227 ET SEQ.**

8  1. As a result of Defendants' negligent violations of 47 U.S.C. § 227(b)(1),
9  Plaintiffs seek for themselves and each Class member $500.00 (five-
10  hundred dollars) in statutory damages, for each and every violation,
11  pursuant to 47 U.S.C. § 227(b)(3)(B).

12  2. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such
13  conduct in the future.

14  3. An order certifying this action to be a proper class action pursuant to
15  Federal Rule of Civil Procedure 23, establishing an appropriate Class and
16  any Subclasses the Court deems appropriate, finding that Plaintiffs are a
17  proper representatives of the Class, and appointing the lawyers and law
18  firms representing Plaintiffs as counsel for the Class.

19  4. Any other relief the Court may deem just and proper.

20  **SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL**
21  **VIOLATION OF THE TCPA, 47 U.S.C. § 227 ET SEQ.**

22  1. As a result of Defendants' willful and/or knowing violations of 47 U.S.C. §
23  227(b)(1), Plaintiffs seek for themselves and each Class member treble
24  damages, as provided by statute, up to $1,500.00 (one-thousand-five-
25  hundred dollars) for each and every violation, pursuant to 47 U.S.C. §
26  227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

27  2. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such
28  conduct in the future.

3.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiffs are proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class.

4.     Any other relief the Court may deem just and proper.

## **TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, federal law, and FRCP 38, Plaintiffs are entitled to, and demand, a trial by jury on all counts so triable.

May 30, 2017

**ZAVERI TABB APC**

By: /s/ Deval R. Zaveri

Deval R. Zaveri, SBN 213501
James A. Tabb, SBN 208188
402 West Broadway, Suite 1950
San Diego, CA 92101
Tel:  (619) 831-6988
Fax: (619) 239-7800
dev@zaveritabb.com
jimmy@zaveritabb.com

James R. Patterson, SBN 211102
Allison H. Goddard, SBN 211098
**PATTERSON LAW GROUP**
402 W. Broadway, 29th Floor
San Diego, CA 92101
Tel:  (619) 756-6990
Fax: (619) 756-6991
jim@pattersonlawgroup.com
ali@pattersonlawgroup.com

*Attorneys for Representative Plaintiffs*

SECOND AMENDED COMPLAINT
Case No.: 15-CV-08356-AB-KS